GRAVOIS BANK et al., Petitioners,

v.

BOARD OF GOVERNORS OF the FED-
ERAL RESERVE SYSTEM et al.,
Respondents,

and

Manchester Financial Corp. and the Na-
tional Bank of Affton, Intervenors.

No. 72–1423.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1973.

Decided April 27, 1973.

Richard L. Hughes, St. Louis, Mo., for petitioners.

David F. Ulmer, St. Louis, Mo., for intervenors.

James C. Hair, Atty., Department of Justice, Washington, D. C., for respondents.

Before VAN OOSTERHOUT, Senior Circuit Judge, MEHAFFY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The petitioners, three Missouri banks, ask us to review an order of the St. Louis Federal Reserve Bank granting the intervenor, Manchester Financial Corporation, permission to acquire The National Bank of Affton, a bank in organization.

Manchester Financial Corporation (MFC) is a bank holding company incorporated in 1968. In September of 1969, pursuant to a reorganization plan, the shareholders of the Manchester Bank of St. Louis, a state chartered bank, exchanged their Manchester Bank stock for shares in MFC.[1] As a result of the reorganization, the Manchester Bank became the principal subsidiary of MFC. The management of MFC and the Manchester Bank are substantially identical.

On March 29, 1972, MFC filed an application with the Board of Governors of the Federal Reserve System (Board) pursuant to § 3(a)(3) of the Bank Holding Company Act of 1956, 12 U.S.C. § 1842(a)(3), for prior approval by the Board of its proposed acquisition of one hundred percent (less director's qualifying shares) of the voting shares of the proposed Affton Bank.[2] Pursuant to its regulations, the Board delegated its authority for approval of the acquisition to the St. Louis Federal Reserve Bank (Reserve Bank). 12 C.F.R. § 265.2(f)(22).

The Reserve Bank, in turn, pursuant to 12 U.S.C. § 1842(b), notified the Comptroller that it had received MFC's application. The Comptroller did not reply. However, on October 29, 1971, the Comptroller had granted his preliminary approval to the chartering of the Affton Bank, subject to the condition that MFC would be allowed to acquire the Affton Bank stock. In view of the fact that the Comptroller did not recommend disapproval of MFC's application, it was not necessary for the Board to grant a hearing on the application. See, 12 U.S.C. § 1842(b). On May 3, 1972, petitioners' attorney submitted written objections to the Board requesting that the Board deny MFC's application.[3] On June 12, 1972, the Reserve Bank issued an order approving MFC's application. The petitioners filed a petition for review of the Reserve Bank's order with this Court on July 11, 1972, but they did not seek a stay of the order pending the outcome of the appeal. On August 12, 1972, MFC

1. The Manchester Bank has 220,000 shares outstanding. All but 1,280 of these shares are now owned by MFC. Eight hundred fifty of the shares not owned by MFC are held by the seventeen directors of the Manchester Bank as "director qualifying shares." Four hundred thirty shares are owned by persons who did not exchange their Manchester Bank stock for stock in MFC.

2. The Affton Bank is located in Affton, Missouri, an unincorporated area of South St. Louis County.

3. The petitioners had initially informed the Board of their objections in a letter of November 16, 1971.

advised the Reserve Bank that it had completed the acquisition. Thereafter, the Affton Bank commenced operating.

The petitioners make four contentions on this appeal:

(1) That the Board has no jurisdiction to approve a bank holding company's application to acquire a newly created bank.

(2) That the Comptroller of the Currency improperly delegated his authority by conditioning his grant of a charter to the Affton Bank upon subsequent approval by the Board of MFC's request for permission to acquire the Affton Bank stock.

(3) That the Reserve Bank, in approving MFC's acquisition of the Affton Bank stock, failed to make a factual determination as to whether or not the Affton Bank would be operated as a de facto branch of the Manchester Bank.

(4) That the Affton Bank will be operated as a de facto branch of the Manchester Bank, in violation of Missouri law and 12 U.S.C. § 36(c).

We review these contentions seriatim.

■ (1) The Bank Holding Company Act of 1956, as amended, 12 U.S.C. § 1841 et seq., *inter alia,* regulates the acquisition of assets by bank holding companies. Section 3(a)(3) of the Act requires that the bank holding companies obtain approval from the Board prior to obtaining ownership or control of stock in any "bank" if, as here, the acquisition will result in its owning in excess of five percent of that bank's voting shares. 12 U.S.C. § 1842(a)(3). The petitioners argue that because the Bank Holding Company Act defines "bank" in terms of an existing operational institution, 12 U.S.C. § 1841(c), the Board was without jurisdiction to approve MFC's acquisition of the proposed, but not yet operating, Affton Bank.

We reject this contention. In doing so, we note that the Supreme Court in Whitney Nat. Bank v. Bank of New Orleans & Trust Co., 116 U.S.App.D.C. 285, 323 F.2d 290 (1963), rev'd on other grounds, 379 U.S. 411, 417, 85 S.Ct. 551, 555, 13 L.Ed.2d 386 (1965), stated:

> "The Bank Holding Company Act of 1956 prohibits a bank holding company from acquiring ownership or control of a national bank, *new or existing,* without the approval of the Federal Reserve Board. * * *." (Emphasis added.)

See also, First National Bank in Billings v. First Bank Stock Corp., 306 F.2d 937 (9th Cir. 1962).

Moreover, we note that the Board has historically construed the statute as allowing it to approve the acquisition of new banks by bank holding companies, and that it approved one hundred seven such acquisitions between 1960 and 1972. The construction is, in our view, reasonable and, accordingly, we give great weight to it. See, Investment Company Institute v. Camp, 401 U.S. 617, 626–627, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971).

■ (2) The petitioners' contention that the Comptroller improperly delegated his chartering authority to the Board by conditioning the grant of the "certificate of authority to commence business" upon subsequent approval by the Board of MFC's request for permission to obtain the Affton Bank stock is without merit. The applicable statute requires that the identity of the shareholders in a proposed bank be set out in the application for a charter. 12 U.S.C. § 22. Moreover, in granting the charter, the Comptroller is obligated to determine that the aforementioned condition, among others, is met. 12 U.S.C. § 26. Accordingly, where the prospective shareholder must also gain approval of the Board to acquire the stock, it is necessary for the Comptroller to condition the granting of the charter on subsequent approval of the acquisition by the Board. The Comptroller had independently made his determination as to identity of the shareholders and, in our view, the "condition" does not represent an unlawful delegation of this duty. It

merely insures that his determination will be carried out.

(3) The petitioners contend that the Reserve Bank, in considering MFC's application for prior approval, did not examine the facts to determine whether or not the Affton Bank would be operated as a de facto branch of the Manchester Bank. They argue that historically the Board has maintained that such an examination is not required, and they emphasize that the record indicates that the Reserve Bank followed the Board's traditional practice here. We agree.

The parties agree that Missouri is a unit bank state which, by law, prohibits branch banking. They also agree that in view of the Supreme Court's decision in *Whitney,* the Board may not approve a bank holding company's application to acquire stock of a bank in a unit bank state if the bank will, as a practical matter, be operated as a branch. See, Commercial Nat. Bank of Little Rock v. Board of Gov., 451 F.2d 86, 89 (8th Cir. 1971). The Board maintains that the Reserve Bank examined this issue in the instant case and found that the proposed acquisition represented a bona fide holding company operation and would not be operated as a branch.

■ Our review in this case is largely governed by the Bank Holding Company Act. Section 9 of the Act provides that review may be obtained in this Court. 12 U.S.C. § 1848. The statute defines the extent of our jurisdiction and requires that "[t]he findings of the Board as to the facts, if supported by

substantial evidence, shall be conclusive." Implicit in this later command is a requirement that the Board make findings of fact to facilitate our review. They have done so here, and it is to those findings and the record which we must look to determine whether or not the Board has decided that the Affton Bank would not be operated as a branch of the Manchester Bank.

■ The Board points out that the Reserve Bank, acting under delegated authority,[4] approved MFC's application with the written objections of the petitioners before it. It emphasizes that the Reserve Bank specifically found that "consummation of the proposal would be in the public interest"[5] and argues that this finding could not have been made if the Reserve Bank had found the Affton Bank to be a branch. While under some circumstances it might be proper for a reviewing court to assume that this finding indicates that the Board did examine the facts to determine if de facto branching would result, such an assumption would not be proper here. This is true because here the record indicates that an appropriate examination was not made.

We are driven to this conclusion by a letter of June 12, 1972, written by the Reserve Bank's Vice President, Harold E. Uthoff, to the petitioners' attorney. There, Mr. Uthoff made the following statement explaining the Reserve Bank's disposition of the petitioners' objection:

"Careful consideration was given to comments contained in your formal

---

4. The propriety of this delegation of authority is not challenged here.

5. This finding was made in the Reserve Bank's letter of June 12, 1972, to MFC granting approval to MFC's proposed acquisition of the Affton Bank stock. The letter was written over the signature of Harold E. Uthoff, Vice President of the St. Louis Federal Reserve Bank. A similar finding was made by Carrold L. Jack, Investigating Assistant Examiner, in his staff report to Mr. Uthoff. Earlier in this same staff report, Mr. Jack indicated that the petitioners "believe this acquisition to be in violation of Missouri

State branch banking laws, notwithstanding an Opinion by the Attorney General of the State to the contrary." Mo.Atty. Gen.Opinion No. 375 (July 27, 1971). There, the Missouri Attorney General surmised that:

"* * * [t]he Missouri courts would follow the cases from other jurisdictions in holding that mere ownership by a holding company of controlling stock holdings in several banks or trust companies, does not constitute illegal branch banking. * * *"

However, the opinion does not discuss the de facto branch issue.

protest dated November 16, 1971 in which it was contended that the laws of Missouri clearly prohibit branch banking. *On several occasions in the past the Board of Governors has considered the question of whether the existence of restrictive or prohibitive branching laws are a ban to approval of a proposed bank holding company acquisition and has rejected such contention for reasons cited in the matter of Application of First Arkansas Bankstock Corporation, Little Rock, Arkansas* (1970 Federal Reserve Bulletin, page 779)." (Emphasis added.)

It is evident from this statement that the Reserve Bank was aware of the petitioners' de facto branch argument. However, it chose to dispose of the contention by reference to a prior analogous case decided by the Board. Thus, reference that that prior case is necessary to ascertain the extent to which the de facto branch issue was considered. The applicable portion of that decision reads as follows:

" * * * The Protestants were reminded at the oral presentation that the Board has, on several occasions, taken the position that *a State's restrictive branch banking laws do not,* in the light of the legislative history of the Act, *provide guidance with respect to the Board's responsibilities* in considering an application to form or expand a bank holding company in such State. (See, Application of Tennessee Financial Corporation, 1969 Federal Reserve Bulletin, 160, 161, and cases there cited.) The Board here reaffirms that position. * * * " (Emphasis added.)

First Arkansas Bankstock Corporation, Little Rock, Arkansas, 1970 Federal Reserve Bulletin 778, 779.

In Application of Tennessee Financial Corporation, 1969 Federal Reserve Bulletin 160, 161, the Board made a similar statement to that quoted from *First Arkansas* and gave the following citations in support of that statement:

(a) Application of Farmers and Mechanics Trust Company, Childress, Texas, 1960 Federal Reserve Bulletin 14, 16;

(b) Application of Denver U. S. Bancorporation, Inc., Denver, Colorado, 1963 Federal Reserve Bulletin 1518, 1527;

(c) Application of First Colorado Bankshares, Inc., Englewood, Colorado, 1963 Federal Reserve Bulletin 1646, 1651.

Keeping in mind the fact that the Reserve Bank rejected the petitioners' contention by relying on the Board's prior decision in *First Arkansas,* which in turn specifically relied on the reasoning given in the above cited Board decisions, we now review those decisions.

(a) *Farmers and Mechanics Trust Company.* There, the Board stated:

" * * * Thus, notwithstanding proposals made on the floor of the Congress regarding the relation of State branch banking laws to holding company expansion, *the existence in a particular State of a prohibition against branch banking cannot be weighed as an adverse consideration by the Board in exercising its judgment on a holding company's application to acquire stock of a bank in that State.*" (Emphasis added.)

1960 Federal Reserve Bulletin at 16.

(b) *Denver U. S. Bancorporation.* There, the Board reaffirmed and expanded the principle stated in *Farmers and Mechanics Trust Company:*

"The Board finds inapplicable to its statutory functions under Section 3 of the Bank Holding Company Act both the reasoning and holding in the *Bank of New Orleans* case. Accordingly, it believes its earlier position in the *Farmers and Mechanics Trust Company* matter to be consistent with controlling law and precedent for the Board's present action in deciding the bank holding company application now before it."

1963 Federal Reserve Bulletin at 1527.

(c) *First Colorado Bankshares*. There, the Board stated:

"* * * [T]he existence of a State statutory prohibition against branch banking, as in Colorado, cannot be weighed as an adverse consideration by the Board in its exercise of judgment on an application by a bank holding company to acquire stock of a bank in that State. The Board has considered the point * * * that the Board's position should be reconsidered in the light of a recent decision by the United States Court of Appeals for the District of Columbia in Saxon, Comptroller of the Currency v. Bank of New Orleans and Trust Company et al., 116 U.S.App.D.C. 285, 323 F.2d 290, decided August 14, 1963. * * * The Court's ultimate decision was premised upon a specific finding that, in its organization, financing, management, and operation, the new national bank was to all intents and purposes a branch of an existing national bank.

"The Board finds inapplicable to its statutory functions under Section 3 of the Bank Holding Company Act both the reasoning and holding in the *Bank of New Orleans* case. Accordingly, it believes its earlier position in the *Farmers and Mechanics Trust Company* matter to be consistent with controlling law, and precedent for the Board's present action in deciding the bank holding company application now before it."

1963 Federal Reserve Bulletin at 1651.

A close reading of these and other Board decisions reveal that the standards applied by it in reviewing branching challenges are vague and differ somewhat with each decision. Consequently, it is difficult to precisely determine the Board's position on the issue before us. However, by specifically rejecting the reasoning and holding of the D.C. Circuit's *Whitney* [6] decision, the Board made it clear in *Denver U. S. Bancorporation* and *First Colorado Bankshares* that it was of the view that it need not examine the facts to determine if, as a practical matter, the acquisition of a bank by a bank holding company would result in the creation of a branch bank. That position, of course, is contrary to current law, and the Board has acknowledged that fact on this appeal. Yet, as was demonstrated above, the Reserve Bank's rejection of the petitioners' de facto branching argument in the instant case was ultimately based in part on these two Board decisions. Thus, contrary to the assertions made in the Board's brief and oral argument, we are compelled to conclude that the Reserve Bank failed to examine the facts to determine if the Affton Bank would be a de facto branch of the Manchester Bank.

The Board argues that this conclusion is inconsistent with our affirmance of its *First Arkansas* decision in Commercial Nat. Bank of Little Rock v. Board of Gov., *supra*. We disagree. The principal issue in *Little Rock* was whether a holding company operation *per se* inevitably constituted branch banking. We held that it did not, but stated that de facto branch banking was prohibited in Arkansas even if done through a holding company structure. We went on to hold that the record did not reveal a violation of the branch banking laws of that State. We were not squarely faced there with the issue raised here—*viz.*, whether the Board failed to consider if a de facto branch would be created. If

---

**6.** The *Whitney* decision is referred to by its companion's case name, Saxon, Comptroller of the Currency v. Bank of New Orleans and Trust Company et al., in these decisions of the Board. We note that the Supreme Court reversed the Court of Appeals' decision in *Whitney* on procedural grounds and did not reach the merits. However, the Supreme Court did recognize that it would be improper for the Board to approve a bank holding company's acquisition if in fact a branch bank would result. Whitney Nat. Bank v. Bank of New Orleans & Trust Co., 116 U.S.App.D.C. 285, 323 F.2d 290 (1963), rev'd on other grounds, 379 U.S. 411, 418, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). See, Commercial Nat. Bank of Little Rock v. Board of Gov., 451 F.2d 86, 89 (8th Cir. 1971).

**552**

we had been faced with the question, we would have answered it in the same way as we do here, assuming there was nothing further in that record on this issue.

(4) In view of our holding that the Reserve Bank failed to consider whether the Affton Bank would be a de facto branch of the Manchester Bank, we feel that it would be improper for us to go to the merits of the matter. The Board must make the initial determination of the issue on its merits. Accordingly, consistent with the dictates of 12 U.S.C. § 1848, we remand this case to the Board.

In reconsidering this case, the Board shall follow the guidelines laid down by this Court in Commercial Nat. Bank of Little Rock v. Board of Gov., *supra*, 451 F.2d at 89–90.

The petitioners did not initially ask for a stay of the Board's approval of MFC's acquisition of the Affton Bank stock, and we understand that the Affton Bank is currently operating as a subsidiary of MFC. It can continue to do business pending review by the Board.

Remanded for further review consistent with this opinion.