**NORTH HILLS BANK et al., Petitioners,**

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM,**
**Respondent.**

**No. 74–1267.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1974.

Decided Nov. 14, 1974.

Edward E. Schmitt, J. Nelson Happy and Roy R. Darke, Kansas City, Mo., for petitioners.

Carla A. Hills, Asst. Atty. Gen., and Stephen F. Eilperin and Robert S. Greenspan, Attys., Dept. of Justice, Washington, D. C., for respondent.

David F. Ulmer and Gerard K. Sandweg, Jr., St. Louis, Mo., for intervenors.

Before VOGEL, Senior Circuit Judge, and LAY and STEPHENSON, Circuit Judges.

VOGEL, Senior Circuit Judge.

In this case we are asked to review an order of the Board of Governors of the Federal Reserve System (Board) which approved the acquisition of Mercantile National Bank of Clay County (Bank), a newly chartered national banking institution, by Mercantile Bancorporation, Inc. (Mercantile), a registered bank holding company.

On October 11, 1973, Mercantile Bancorporation, Inc., applied to the Board pursuant to § 3(a)(3) of the Bank Holding Company Act of 1956,[1] as amended,

1. 12 U.S.C. § 1842(a)(3).

for prior approval of the proposed acquisition of 100% of the voting shares (less directors qualifying shares) of Mercantile National Bank of Clay County, Kansas City, Missouri. On March 15, 1974, the Board approved the acquisition without a hearing. The petitioners, four small banks in Clay County, Missouri, have joined together to challenge in this review the approval given by the Board to Mercantile. This Court has jurisdiction under 12 U.S.C. § 1848.

Approval for the proposed acquisition of Bank by Mercantile is subject to the provisions of 12 U.S.C. § 1842(c), which provides:

> (c) The Board shall not approve—
>
> (1) any acquisition or merger or consolidation under this section which would result in a monopoly, or which would be in furtherance of any combination or conspiracy to monopolize or to attempt to monopolize the business of banking in any part of the United States, or
>
> (2) any other proposed acquisition or merger or consolidation under this section whose effect in any section of the country may be substantially to lessen competition, or to tend to create a monopoly, or which in any other manner would be in restraint or trade, unless it finds that the anticompetitive effects of the proposed transactions are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to be served.
>
> In every case, the Board shall take into consideration the financial and managerial resources and future prospects of the company or companies and the banks concerned, and the convenience and needs of the community to be served.

12 U.S.C. § 1848, affording judicial review, provides:

> The findings of the Board as to the facts, if supported by substantial evidence, shall be conclusive.

In asking that the order of the Board be set aside by this court and that the matter be remanded to the Board for reconsideration, petitioners raise two issues: (1) They contend that the Board failed to properly apply the standards set forth in 12 U.S.C. § 1842(c), *supra,* in concluding that the acquisition would not have anticompetitive effects; and (2) that the Board erroneously deferred to the apparent conclusion of the Comptroller of the Currency that Mercantile National Bank of Clay County would not be an illegal branch under Missouri law.

In its order approving the acquisition, the Board found and concluded upon substantial evidence undisputed herein that:

> Applicant [Mercantile Bancorporation, Inc.], the largest banking organization and bank holding company in Missouri, controls 15 banks with aggregate deposits of approximately $1.2 billion, which represent 9.2 per cent of total commercial bank deposits in the State. *Since Bank is a proposed new bank, its acquisition would neither eliminate any existing competition nor immediately increase Applicant's share of commercial bank deposits.*
>
> *Bank will be located in a rapidly growing residential area in the northern part of the Kansas City banking market.* It is anticipated that Bank will serve primarily southeast Platte County and southwest Clay County. Due in part to the proximity of the new Kansas City International Airport, *it is expected that Bank's proposed service area will continue to experience a steady growth in population with an attendant need for additional sources for banking services.* While Applicant has three banking subsidiaries in the market and is the fifth largest banking organization therein, Applicant controls only 3.3 per cent of market deposits. *Under such circumstances, the formation of a new bank is viewed as an attempt to provide additional banking services to a growing area and, from the facts of record, is not regarded as an attempt*

*to preempt a market.* (Emphasis supplied.)

Petitioners particularly challenge the finding by the Board to the effect that inasmuch as this is a new bank its acquisition would neither eliminate any existing competition nor immediately increase Mercantile's share of bank deposits. However, the record indicates that the Board considered other relevant factors in measuring the potential anticompetitive effects of the proposed *de novo* expansion. The Board considered the relevant geographic market, the anticipated primary service area, and the size and statewide banking position of Mercantile.

■ Appellate review of a decision of the Board which is rationally based upon a full and complete record is severely limited. The Board's particular competence to determine whether a bank holding company acquisition will have substantial anticompetitive effects has been recognized by the Congress and accepted by the courts. In Northwest Bancorporation v. Board of Governors, 303 F.2d 832 (8th Cir. 1962), this court, in sustaining a finding by the Board that that particular proposed acquisition *would* have substantial anticompetitive effects, stated, at 840–841:

> \* \* \* The Board upon whose special competency Congress relied in delegating the authority to approve or disapprove bank acquisitions by holding companies, concluded that in the overall picture the public interest would be adversely affected and competition would be lessened by the acquisition. Through use of the same facts petitioner finds that by the acquisition competition would be enhanced and the public welfare unimpaired. This is no more than a disagreement with the Board's conclusion. The responsibility of making the determination was vested by Congress with the Board and its conclusion must prevail.

This court also said in the same case, at page 841:

> \* \* \* Where basic facts are not in dispute, it is then particularly true that the Board here, or a like governmental agency under similar situations, brings to bear its experience and its particular expert judgment. (Citations omitted.)

That is precisely the situation herein. The four petitioning banks merely disagree with the Board's conclusion. The facts are not in dispute and accordingly the view of the Board must prevail, regardless of whether or not this court might have conclusionary views contrary to those of the Board. Congress rested the power of approval or disapproval squarely with the Board and this court may not substitute its judgment for that of the Board. See, also, Commercial Nat. Bank of Little Rock v. Board of Governors, 451 F.2d 86, 90 (8th Cir. 1971).

■ The contention of the petitioners that the Board erroneously deferred to the apparent conclusion of the Comptroller of the Currency that the Bank would not be an illegal branch under Missouri law is completely without foundation. It was entirely appropriate and necessary for the Board to determine whether the proposed acquisition would violate Missouri's branch banking statute. Gravois Bank v. Board of Governors, 478 F.2d 546 (8th Cir. 1973). In doing so, it merely noted that the Comptroller of the Currency had recommended approval of the application and that his office had granted preliminary approval for the charter of the bank, " \* \* \* apparently concluding that it would not be an illegal branch under applicable Missouri law." The Board nevertheless continued in its finding that the bank would be a separate corporation with its own capital stock and loan limit based on such capital stock, managed by its own officers, its board of directors generally separate and independent from the boards of the applicant, and the applicant's subsidiaries, and many other facts justifying its independent judgment that "upon consummation of the proposed acquisition, a unitary operation

will not exist between Bank and any of Applicant's other banking subsidiaries in contravention of Missouri's branching law."

We must conclude that the Board's action should be and is approved.

LAY, Circuit Judge (concurring).

I concur in Judge Vogel's well-analyzed opinion. Nonetheless I am troubled enough to comment on a collateral matter. Shortly before the scheduled argument in this case, the parties by and through their respective counsel stipulated to waive oral argument. No reasons were given. When lawyers agree to waive appellate argument, my initial thoughts are that (a) one party (generally the appellant) must feel there is little merit to the appeal, and (b) both counsel must feel that oral argument before the appellate court is not very meaningful. The latter rationalization surely misses its mark.

This is not an ordinary case. It presents complex legal issues, with subtle and difficult questions. The issues relate to a narrow area of the law, unfamiliar terrain to some judges, like myself, in which we look forward to the aid and expertise of experienced counsel at oral argument. If the result here is in error (judges are fallible human beings), the lawyers and the parties may attribute it to our inability to totally perceive the significance of portions of the written record or to fully comprehend the law briefed. Many judges *listen* better than they read—at least I do. When oral argument is waived, the parties lose their only real opportunity to *excite* the minds and *sharpen* the legal reasoning of at least the two judges who will not undertake the same in-depth analysis and research as the judge who drafts the opinion. Waiving the opportunity for oral argument, in my judgment, is advocacy at its poorest level.

Mr. Justice Frankfurter once said: "Every case worthy of an appeal is worthy of an argument." Sometimes when the case is patently not worthy of an appeal, this court will screen the case for "no argument." We do this not to save time for the court (oral argument takes little time for judges) but because *the court* feels the issue does not merit oral argument. But the converse is generally true when, as here, the court sets the case on the argument calendar. Karl Llewellyn has observed:

> The brief can develop the frame; but the oral argument must get the case set into the desired frame, and for keeps. I do not see how so delicate a task can responsibly be left to paper when an accepted institutional pattern offers a way of dealing with the tribunal face to face.

K. Llewellyn, The Common Law Tradition: Deciding Appeals 240 (1960).[1]

We need to strive for excellence on appeal as well as in trial.

---

[1]. Arthur T. Vanderbilt once reflected:
 The argument of an appeal is the climax of a case. . . . You face a select audience that is experienced, professionally critical but not unfriendly, and keenly interested in knowing the facts and applying the law to them and more or less prepared for the occasion. The challenge is great; the entire outcome of the case, victory or defeat, will be influenced by the effectiveness of your oral argument.
 A. Vanderbilt, Forensic Persuasion, The 1950 John Randolph Tucker Memorial Lectures at Washington and Lee University 14–15 (1950).