CITY NATIONAL BANK, Appellant,

v.

James E. SMITH, Comptroller of Currency of the United States, Meadowbrook National Bank, Appellees.

No. 73–2132.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 29, 1974.

Decided May 27, 1975.

David E. McGiffert, Washington, D. C., with whom John D. Taurman, Wash-ington, D. C., was on the brief, for appellant.

Donald Etra, Atty., Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., Dept. of Justice, Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, were on the brief, for appellee Smith.

John D. Hawke, Jr., Washington, D. C., with whom Irvin B. Nathan, Washington, D. C., was on the brief, for appellee Meadowbrook National Bank.

Before McGOWAN, ROBINSON and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant City National Bank filed suit in the District Court challenging the preliminary approval by appellee Comptroller of the Currency of a national bank charter for appellee Meadowbrook National Bank. The court denied City's motion for summary judgment and granted summary judgment for the Comptroller and Meadowbrook.[1] City urges reversal on the grounds that misrepresentations by Meadowbrook's organizers precluded approval of the application,[2] that the Comptroller failed to investigate adequately and neglected to decide the misrepresentation issue[3] and that the Comptroller did not explain his decision sufficiently to permit effective judicial review.[4] We affirm.

## I. THE APPLICATION PROCEEDINGS

The National Bank Act[5] empowers the Comptroller to issue charters for national banks.[6] The dual purpose of

---

1. City Nat'l Bank v. Smith, Civil No. 566–73 (D.D.C., Aug. 21, 1973). The court also denied the Comptroller's motion to dismiss.

2. See Part II, *infra.*

3. See Part III, *infra.*

4. See Part IV, *infra.*

5. 12 U.S.C. § 21 et seq. (1970).

6. The present statutory scheme is derived from the Act of June 3, 1864, ch. 106, 13 Stat. 99. A literal reading of the legislation would require the Comptroller to grant an application if the statutory standards are met. See 12 U.S.C. § 27 (1970). His discretion to nonetheless deny is, however, unquestioned. *See* Sterling Nat'l Bank v. Camp, 431 F.2d 514, 516 (5th Cir. 1970), cert. denied, 401 U.S. 925, 91

the chartering process is to regulate entry into the banking industry on the basis of economic considerations and to assure that national banks are competently and honestly operated. These objectives are reflected in the topics subject to investigation prior to approval of applications for charters:

(1) The adequacy of the proposed banks structure.

(2) The earning prospects of the proposed bank.

(3) The convenience and needs of the community to be served by the proposed bank.

(4) The character and general standing in the community of the applicants, prospective directors, proposed officers, and other employees, and other persons connected with the application or to be connected with the proposed bank.

(5) The banking ability and experience of those officers and other employees.[7]

On July 17, 1972, a group of businessmen applied for a charter authorizing organization of Meadowbrook National Bank in the eastern section of Fort Worth, Texas. The Regional Administrator of National Banks initiated an investigation, including a four-day field examination. He also notified the 40 existing banks in the county in which Meadowbrook would be located that the application had been filed and invited written comments. City responded in opposition to the proposed charter, expressing the view that there was no economic necessity for a new bank in the area.[8] Later City requested, and was granted, a public hearing on the application[9] at which it might defend that position.

At the hearing Meadowbrook presented evidence of the need for a new bank in east Fort Worth. The testimony of witnesses called by City was directed solely towards the economic considerations generated by the application. Meadowbrook offered further testimony in rebuttal concerning the economic desirability of favorable action on the application.

In closing argument, following Meadowbrook's summation, City's counsel raised a question regarding a possible lack of full disclosure in the application. This charge had not surfaced in the pre-hearing communications nor had it been the subject of any testimony offered at the hearing.[10] City suggested that Meadowbrook's organizers had concealed the identity of an interested party,[11] and Meadowbrook vigorously denied this allegation.[12]

---

S.Ct. 879, 27 L.Ed.2d 829 (1971); Webster Groves Trust Co. v. Saxon, 370 F.2d 381, 387–388 (8th Cir. 1966).

**7.** 12 C.F.R. § 4.2(b) (1974). See also 12 U.S.C. §§ 1814, 1816 (1970).

**8.** The letter reads in pertinent part:

Our opposition to the proposed charter is based on the following objections:
1. There is no public necessity for a bank at the proposed location. This fact is already well established by a recent public hearing for a state charter only a few blocks from this same location. The proposed state charter application was denied on the basis of no necessity in the area.
2. The proposed location is less than two miles from City National Bank and ninety percent of the trade area of the proposed bank lies within two miles of City National Bank's location.

3. The location is in an area now adequately served by City National Bank.

At the time, City was the only bank in the area.

**9.** See 12 C.F.R. § 5.5 (1974).

**10.** But see 12 C.F.R. § 5.10(a) (1974).

**11.** The only supporting evidence offered was a two-page affidavit, dated more than a month prior to the hearing, by Earl R. Waddell, City's Chairman and principal stockholder.

**12.** Meadowbrook's counsel represented that the allegedly concealed party expected to subscribe for Meadowbrook stock, that his intention to do so had previously been disclosed to the Comptroller's office, and that he had always recognized that the distribution of Meadowbrook's shares was subject to the Comptroller's approval. See note 16, *infra*.

After the hearing intradepartmental recommendations were submitted to the Comptroller to assist the final decision.[13] The Regional Administrator's report noted the concealment claim, but concluded that "ownership distribution appears satisfactory." The Comptroller approved the application conditionally and stated the following reasons:

> Population of area adequate to support this new entry. Only bank in area is undoubtedly of sufficient size (32 million) to stand competition, the addition of which should redound to the benefit of the consuming public. Subject to aggregate capital of at least one million.[14]

The applicants were notified that the Comptroller had granted preliminary approval subject to a number of conditions, including acceptability of initial management personnel and submission of financial and biographical data by each person who subscribed for 5% of Meadowbrook's shares.[15] The distribution of shares was, as it apparently is in all cases, subject to the Comptroller's approval of the subscribers.[16]

City then filed suit against the Comptroller to invalidate approval of the application, and Meadowbrook was granted leave to intervene. The primary ground for relief stated in City's amended complaint related to the alleged misrepresentation by Meadowbrook's organizers in the application. The Comptroller submitted the full administrative record,[17] and all parties moved for summary judgment. The District Court concluded that "the Comptroller's decision to grant preliminary approval of the charter application of Meadowbrook National Bank is both rationally and substantially supported by the record and the record does not support plaintiff's charge of fraud, misrepresentation, or concealment, and this charge was reasonably and properly rejected by the Comptroller's office."

## II. THE MISREPRESENTATION CHARGE

The Meadowbrook application represented, in the standard form prescribed by the Comptroller, that its organizers were not acting in behalf of any person "undisclosed to the Comptroller" and that there was no "agreement or understanding" providing for purchase of Meadowbrook shares by any person.[18] City claims that the organizers had an understanding with Dee J. Kelly, the

---

**13.** Favorable recommendations were made by the field examiner and a representative of the Department of Economic Banking Research. The Regional Administrator, the Director of the Bank Organization Division and the Deputy Comptroller advised denial of the application. All of these recommendations were based on economic considerations, and the staff summaries did not refer to the misrepresentation charge.

**14.** These comments were written by hand at the end of staff summaries. *Compare* First Nat'l Bank v. Smith, 365 F.Supp. 898, 904 (W.D.Ark.1973), rev'd, 508 F.2d 1371 (8th Cir. 1974).

**15.** Another condition was the filing of financial and biographical data regarding any new officer or director, prior to assumption of the position, in the first year of operation.

**16.** The "INSTRUCTIONS FOR INCORPORATION OF A NEW NATIONAL BANK AFTER RECEIPT OF COMPTROLLER'S PRELIMINARY APPROVAL" provide in pertinent part:

> No payments for subscriptions may be accepted or binding subscriptions entered until the full subscription list has been submitted to [the Comptroller's] office and accepted. Subscription offers must contain a provision voiding the offer if the subscriber is deemed unacceptable by the Comptroller.

**17.** *See* Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106, 111 (1973).

**18.** The relevant paragraphs of the application state:

> SIXTH, that the undersigned are not acting in the premises as representative of or on behalf of any person, partnership, association, or corporation undisclosed to the Comptroller of the Currency.
>
> SEVENTH, that the undersigned are not directly or indirectly party to any written or oral agreement or understanding providing for the undersigned or any other person, partnership, association, or corporation to directly or indirectly purchase any stock of the said national bank to be legally or equitably owned by the undersigned to or for the benefit of any person, partnership, association, or corporation, except as follows:
>
> NONE.

principal shareholder of another area bank, that Kelly would be a stockholder and that this understanding suggests that they were acting on his behalf, as well as their own, in filing the application. City contends that the failure to disclose this arrangement—variously termed by City "fraud," "misrepresentation," "omission of material facts" and "lack of candor"—invalidated the Comptroller's approval of the application.[19]

■ The standard for judicial review of the Comptroller's action in granting or denying a charter application was recently set by the Supreme Court in Camp v. Pitts.[20] The test is whether the Comptroller's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[21] By this standard, the District Court was clearly justified in rejecting the misrepresentation charge.

The evidence offered by City to substantiate its allegations was, to say the least, far from compelling. On the other hand, there was a good deal of evidence indicating that Kelly's proposed participation in Meadowbrook was disclosed to the Comptroller's office, even if the application was not literally accurate in all particulars.[22] Before the filing of the application, the applicants told the Deputy Regional Administrator, in a meeting with Kelly present, that Kelly intended to become a stockholder in the proposed bank. This intention was reaffirmed at the hearing by Meadowbrook's counsel, who also stated that Kelly had recognized throughout the application proceedings that the Comptroller reserved the prerogative of final approval of the stockholders. The field examiner was informed that Kelly intended to subscribe for 5% of the shares, and this fact was contained in the examiner's report, which was a part of the record submitted to the Comptroller. Finally, in a post-hearing letter, Kelly asserted that he always intended to invest in the bank, that he never had any agreement with the organizers and that he realized that any purchase of shares was subject to authorization by the Comptroller. On this record, the approval of the application was not arbitrary, capricious or an abuse of discretion, and the District Court's rejection of the misrepresentation charge must be sustained.

## III. THE ADEQUACY OF THE DECISION-MAKING PROCESS

■ City also asserts that the evidence revealed at the hearing mandated a post-hearing investigation by the Comptroller's office to resolve questions

---

**19.** City cites decisions assertedly holding that if a court determines that an agency has been a victim of misrepresentation, favorable agency action cannot stand unless the agency expressly excused the misrepresentation on the basis of findings supported by substantial evidence. *See* FCC v. WOKO, Inc., 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946); Hall v. FCC, 103 U.S.App.D.C. 248, 257 F.2d 626 (1958); Hall v. FCC, 99 U.S.App.D.C. 86, 237 F.2d 567 (1956). We see no need to consider the validity of this proposition, because the record does not support the claim that there was any material misrepresentation in this case.

**20.** *Supra* note 17. The reviewability of those actions was established in Association of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 156–157, 90 S.Ct. 827, 831–832, 25 L.Ed.2d 184, 190–191 (1970).

**21.** Camp v. Pitts, *supra* note 17, 411 U.S. at 142, 93 S.Ct. at 1244, 36 L.Ed.2d at 111. This standard is specified in the Administrative Procedure Act § 10(e), 5 U.S.C. § 706(2)(A) (1970). The substantial evidence standard of § 10(e) is inappropriate here, because neither the APA nor the National Bank Act requires the Comptroller to hold a hearing. *Id.* at 140–141, 93 S.Ct. at 1243, 36 L.Ed.2d at 110.

**22.** It is not clear that Kelly's intention to become a subscriber is the type of agreement or understanding referred to in the application. See note 18, *supra.* Obviously the organizers were entitled to make exploratory inquiries concerning investor interest before filing. After preliminary application approval, rather than prior to filing the application, is at least arguably the logical time for review of subscribers for acceptability and disclosure of the results of the inquiries and the review. See note 16, *supra.*

that were yet unanswered. The Comptroller's discretion in the area of investigations and hearings relating to charter applications is plain.[23] Although the Comptroller might have been justified in exercising his discretion in favor of further investigation, City's presentation was not so forceful that he was required to do so.

Additionally, the purported concealment was not a major issue in the administrative proceedings, which focused mainly on the need for a new bank in east Fort Worth. Although City has placed great emphasis on that issue in the District Court and on appeal, it was not mentioned at all prior to the hearing—despite ample opportunity to do so—and City did not include any reference to nondisclosure in its presentation of evidence at the hearing.[24] Nor did City question any of the organizers at the hearing, although five of the six were present and one was called by Meadowbrook to testify concerning the need factor. Besides, a "conclusion" filed by City after the hearing listed six reasons for denial of the application but completely ignored the misrepresentation charge. If the record revealed that the Comptroller had not conducted a sufficient inquiry into an important facet of the application, we might be disposed to remand the case for reconsideration.[25] From the manner in which City presented its case prior to seeking judicial review, however, we can conclude only that City itself regarded the misrepresentation claim as a matter of little moment in the case.

■ A related argument posited by City is that the Comptroller's failure to advert to the misrepresentation allegation in his final decision demonstrates that he neither decided nor was aware of the issue. But although the Comptroller did not expressly mention the charge, it was clearly disclosed by the administrative record. Neither the field examiner nor the Regional Administrator, whose reports reflected awareness of the problem, regarded the question as significant enough to merit reference in the summaries of their recommendations. The Comptroller is not obliged to comment personally on every issue, however insignificant, raised in an application proceeding,[26] and in the circumstances presented here we deem the omission inconsequential.

## IV. THE SUFFICIENCY OF THE COMPTROLLER'S DECISION

■ Finally, City argues that the Comptroller's decision does not contain a sufficient contemporaneous explanation of its basis [27] and therefore frustrates effective judicial review.[28] Undoubtedly, judicial review would be a much simpler task were the Comptroller to report his conclusions, and briefly indicate his supporting rationale, on all issues raised in application proceedings. We again note,

**23.** 12 C.F.R. §§ 4.2(b), 5.1 (1974). *See also* First Nat'l Bank v. Camp, 151 U.S.App.D.C. 1, 4, 465 F.2d 586, 589 (1972), cert. denied, 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 256 (1973).

**24.** Although an affidavit was submitted during summation, no explanation has been offered for the failure of the affiant, who was present at the hearing, to testify.

**25.** *See* American Bank v. Smith, 503 F.2d 784, 789 (10th Cir. 1974).

**26.** *See* United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

**27.** See text *supra* at note 14.

**28.** City also asserts the right to a de novo trial on the ground of inadequate factfinding procedures available for misrepresentation charges in application challenges. City made no attempt to call witnesses on the misrepresentation issue, see note 24, *supra,* nor did City raise any questions about the adequacy of the procedures either at the hearing stage or in post-hearing submissions. Furthermore, we see no substantial deficiencies in the conduct of the hearing. In this posture, the adequacy of the factfinding procedures is not here at issue. First Nat'l Bank v. Camp, *supra* note 23, 151 U.S.App.D.C. at 18–19, 465 F.2d at 603–604.

however, that City's misrepresentation charge was neither compelling nor strongly urged prior to judicial review.

 The contention that the Comptroller must make formal findings was flatly rejected by the Supreme Court in Camp v. Pitts.[29] What is required is only a contemporaneous explanation of the decision indicating "the determinative reason for the final action taken." [30] If the record before us raised a substantial doubt as to whether the Comptroller considered a material issue, we would not permit the approval to stand.[31] Here the alleged concealment was only a minor issue; the agency proceedings centered pivotally on economic factors, which were resolved in Meadowbrook's favor and about which there is no present dispute.

City tries to distinguish *Pitts* by noting that the Comptroller's regulations applicable in that case did not require a hearing, and arguing that the present administrative provision for a hearing mandates formal findings on the record. This argument overlooks the clear language of the Administrative Procedure Act, which calls for formal findings [32] in adjudicative proceedings only when a *statute* mandates a hearing be held on the record.[33] The current hearing requirement for charter applications is stated in the Comptroller's regulations [34] and is not embodied in the National Bank Act.[35]

Affirmed.

29. *Supra* note 17, 411 U.S. at 140–141 & n. 3, 93 S.Ct. at 1243 & n. 3, 36 L.Ed.2d at 110 & n. 3. *See also* Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 417, 91 S.Ct. 814, 824, 28 L.Ed.2d 136, 154 (1971).

30. Camp v. Pitts, *supra* note 17, 411 U.S. at 143, 93 S.Ct. at 1244, 36 L.Ed.2d at 111. *See also* Bank of Commerce v. City Nat'l Bank, 484 F.2d 284, 288 (5th Cir. 1973), cert. denied, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974). Formal findings on the record are not required by the Administrative Procedure Act in these cases. See note 32, *infra,* and accompanying text.

31. American Bank v. Smith, *supra* note 25, 503 F.2d at 789.

32. 5 U.S.C. § 557(c) (1970).

33. 5 U.S.C. § 554(a) (1970).

34. 12 C.F.R. § 5.5 (1974).

35. *See* Camp v. Pitts, *supra* note 17, 411 U.S. at 141 n. 3, 93 S.Ct. at 1243 n. 3, 36 L.Ed.2d at 110 n. 3.