The **UNION NATIONAL BANK OF CLARKSBURG, a corporation, et al., Appellants,**

v.

**HOME LOAN BANK BOARD et al., Appellees.**

**No. 12960.**

United States Court of Appeals District of Columbia Circuit.

Argued April 9, 1956.

Decided May 3, 1956.

Mr. James M. Guiher, Clarksburg, W. Va., of the bar of the Supreme Court of Appeals of West Virginia, pro hac vice, by special leave of Court, for appellants. Mr. Henry C. Ikenberry, Jr., Washington, D. C., was on the brief, for appellants.

Mr. Donald B. MacGuineas, Attorney, Department of Justice, with whom Mr. Paul A. Sweeney, Attorney, Department of Justice, was on the brief, for appellees.

Before EDGERTON, Chief Judge, and BAZELON and DANAHER, Circuit Judges.

EDGERTON, Chief Judge.

Appellants are four national banks, two state banks, and an industrial loan company, doing business in or near Clarksburg, West Virginia. They asked the District Court to set aside a resolution of appellee Federal Home Loan Bank Board granting a charter to a proposed building and loan association in Clarksburg. Their complaint alleged that the Board's procedure did not comply with the requirements of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., or of due process of law and that the Board's findings were not supported by substantial evidence. The District Court entered summary judgment dismissing the complaint.

The Home Owners' Loan Act provides in § 5(e), 48 Stat. 133, 12 U.S.C.A. § 1464(e), that "No charter shall be granted * * * unless in the judgment of the Board a necessity exists for such an institution in the community to be served * * * nor unless the same can be established without undue injury to properly conducted existing local thrift and home-financing institutions." We need not decide whether, as appellants contend, the described "institutions" would have standing to maintain this suit. In our opinion neither commercial banks, nor industrial loan companies organized under the laws of West Virginia,[1] even though they do finance homes, are "local thrift and home-financing institutions" in the sense in which that term is used in § 5(e) of the Home Owners' Loan Act.[2] The next section of the Act, § 6, 48 Stat. 134, 12 U.S.C.A. § 1465, authorizes the Board to spend $850,000 of congressionally appropriated funds "in the promotion and development of local thrift and home-financing institutions, whether State or Federally chartered." Neither the Act nor its legislative history suggests that Congress used the term "thrift and home-financing institutions" in different senses in §§ 5 and 6, or that Congress contemplated subsidizing commercial banks and industrial loan companies. We think Congress was concerned only with the creation and the continued existence of institutions, such as savings and loan or building and loan

1. The West Virginia Code provides for incorporation of industrial loan companies, primarily to make personal loans, with only limited power to make loans secured by real estate. An industrial loan company's real estate loans may not exceed one-third of its paid-up capital and surplus. Sections 3166, 3170, 3171, West Virginia Code of 1955.

2. Similarly, ex-members of a Port Security Force, though they "concededly did perform military service", were not "ex-servicemen" within the meaning of a statute. Mitchell v. Cohen, 333 U.S. 411, 417, 68 S.Ct. 518, 92 L.Ed. 774.

associations, which are primarily devoted to receiving savings from their members and lending money on homes.[3]

Since Congress has shown no intention to protect appellants "from competition by a Federal instrumentality * * * they have no basis for asserting that the competition * * * is illegal as to them." Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 278, 225 F.2d 924, 929. Cf. First National Bank of McKeesport v. Home Loan Bank Board, 96 U.S.App.D.C. 194, 225 F.2d 33.

Affirmed.

3. 77 Cong.Rec. 2480, 2481, 2506, 4987.