**FEDERAL TRADE COMMISSION,**
Appellant,

v.

**MANAGER, RETAIL CREDIT COM-
·PANY, MIAMI BRANCH
OFFICE, Appellee.**

No. 73–1844.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 13, 1974.

Decided Feb. 28, 1975.

James P. Timony, Atty., F.T.C., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, and Harold D. Rhynedance, Jr., Asst. Gen. Counsel, F.T.C., were on the brief for appellant.

Edward J. Schmuck, Washington, D. C., with whom Francis M. Gregory, Jr., and Stephen S. Cowen, Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and ROBINSON and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

The Federal Trade Commission (FTC) applied to the District Court for enforcement of an administrative subpoena *duces tecum* requiring the Retail Credit Company (Retail) to produce documentary evidence for a Commission investigation of the practices of certain consumer reporting agencies under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Following a trial the District Court ruled that the FTC, like other Government agencies seeking consumer credit reports regulated by the FCRA, must obtain a court order or the permission of affected consumers in order to compel disclosure of the documents.[1] Because we conclude that the FTC has special statutory power incident to its role as enforcer of the FCRA, we reverse.

I

In 1970 Congress appended to the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq., a number of provisions collectively known as the Fair Credit Reporting Act. Section 602 of the FCRA recognized that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and affirmed the "need to insure that [such] agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." The congressional prescription was a comprehensive series of restrictions on the disclosure and use of credit information assembled by consumer reporting agencies. Section 604 identifies three instances in which reporting agencies may furnish credit reports: (1) in response to an appropriate court order; (2) by permission of consumers whose credit ratings are documented in the reports sought; and (3) to a person with a legitimate business interest in the information.[2] Section 608

---

1. 357 F.Supp. 347 (D.D.C.1973).

2. § 604. *Permissible purposes of consumer reports*

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

allows disclosure of limited portions of the reports—essentially identifying information—to governmental agencies unable to qualify under any of the subsections of section 604.[3] The Act attaches special restrictions to the preparation and disclosure of investigative consumer reports[4] and requires that an agency apprise a consumer who makes an appropriate request of the nature and substance of information in his file, the sources of the data, and the identity of parties to whom it is released.[5]

Section 621 sets forth an elaborate scheme for administrative enforcement

> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or
> (E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

Act § 604, 15 U.S.C. § 1681b.

**3.** *§ 608. Disclosures to governmental agencies*

> Notwithstanding the provisions of section 604, a consumer reporting agency may furnish identifying information respecting any consumer, limited to his name, address, former addresses, places of employment, or former places of employment, to a governmental agency.

Act § 608, 15 U.S.C. § 1681f.

**4.** Act §§ 606, 614, 15 U.S.C. §§ 1681d, 1681*l*.

**5.** Act §§ 606, 609, 610, 15 U.S.C. §§ 1681d, 1681g, 1681h.

**6.** *§ 621. Administrative enforcement*

> (a) Compliance with the requirements imposed under this title shall be enforced under the Federal Trade Commission Act by the Federal Trade Commission with respect to consumer reporting agencies and all other persons subject thereto, except to the extent that enforcement of the requirements imposed under this title is specifically committed to some other government agency under subsection (b) hereof. For the purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act, a violation of any requirement or prohibition imposed under this title shall constitute an unfair or deceptive act or practice in commerce in violation of section 5(a) of the Federal Trade Commission Act

of the FCRA. Subsection (a) imposes upon the Federal Trade Commission the responsibility for enforcing compliance with the requirements of the FCRA with respect to the preponderance of consumer reporting agencies and affirms the Commission's right to use its customary procedural, investigative and enforcement powers.[6] Subsection (b) commits enforcement obligations to specified Government agencies where enumerated institutions or statutes are involved.[7] Though each of the agencies listed in (b) is authorized to use all authority conferred on it by law to enforce the FCRA

> and shall be subject to enforcement by the Federal Trade Commission under section 5(b) thereof with respect to any consumer reporting agency or person subject to enforcement by the Federal Trade Commission pursuant to this subsection, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act. *The Federal Trade Commission shall have such procedural, investigative, and enforcement powers, including the power to issue procedural rules in enforcing compliance with the requirements imposed under this title and to require the filing of reports, the production of documents, and the appearance of witnesses as though the applicable terms and conditions of the Federal Trade Commission Act were part of this title.* Any person violating any of the provisions of this title shall be subject to the penalties and entitled to the privileges and immunities provided in the Federal Trade Commission Act as though the applicable terms and provisions thereof were part of this title.

Act § 621(a), 15 U.S.C. § 1681s(a) (emphasis added).

**7.** (b) Compliance with the requirements imposed under this title with respect to consumer reporting agencies and persons who use consumer reports from such agencies shall be enforced under—

> (1) section 8 of the Federal Deposit Insurance Act, in the case of:
> (A) national banks, by the Comptroller of the Currency;
> (B) member banks of the Federal Reserve System (other than national banks), by the Federal Reserve Board; and
> (C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), by the Board of Directors of the Federal Deposit Insurance Corporation.

in its respective province, none wields powers as comprehensive as that of the FTC.

On April 1, 1972, as part of an ongoing investigation of the practices of certain consumer reporting agencies, the FTC issued a subpoena *duces tecum* to the Manager of the Miami Branch Office of the Retail Credit Company.[8] The company assembles and sells data bearing on

(2) section 5(d) of the Home Owners Loan Act of 1933, section 407 of the National Housing Act, and sections 6(i) and 17 of the Federal Home Loan Bank Act, by the Federal Home Loan Bank Board (acting directly or through the Federal Savings and Loan Insurance Corporation), in the case of any institution subject to any of those provisions;

(3) the Federal Credit Union Act, by the Administrator of the National Credit Union Administration with respect to any Federal credit union;

(4) the Acts to regulate commerce, by the Interstate Commerce Commission with respect to any common carrier subject to those Acts;

(5) the Federal Aviation Act of 1958, by the Civil Aeronautics Board with respect to any air carrier or foreign air carrier subject to that Act; and

(6) the Packers and Stockyards Act, 1921 (except as provided in section 406 of that Act), by the Secretary of Agriculture with respect to any activities subject to that Act.

Act § 621(b), 15 U.S.C. § 1681s(b).

**8.** SUBPOENA DUCES TECUM
UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION

*To* Manager, Retail Credit Company, Miami Branch Office–1313 S.W. 27th Ave., Miami, Florida

*You are hereby required to appear before* Robert W. Russell, Attorney, and David F. Bragg, Investigator of *the Federal Trade Commission, at* Retail Credit Company, Miami Branch Office, 1313 S.W. 27th Ave. *in the City of* Miami, Florida *on the* 20th *day* of April, *1972,* at 2:00 p.*m., to testify,* or in lieu thereof, to furnish the documents and information required. (See attached specifications).

*And you are hereby required to bring with you and produce at said time and place the following books, papers, and documents:*

See attached specifications.

*Fail not at your peril.*

*In testimony whereof, the undersigned, an authorized official of the Federal Trade Commission, has caused the seal of said Federal Trade Commission to be affixed, and has hereunto set his hand at* Washington, D. C., *this* 1st *day* of April, *1972.*

/s/ Illegible

\*　　\*　　\*　　\*　　\*　　\*

SPECIFICATIONS

1. The originals or in lieu thereof, clear, accurate and legible copies of the Field Representative Performance Control Records (Form 930–9–70 or its successor form) for all Field Representatives in your Office for the months of January, February and March 1972;

2. The originals, or in lieu thereof, clear, accurate and legible copies of Field Representative's Record (Form 105–1–71 or its successor form) for all Field Representatives in your office for 1971 and 1972;

3. The originals, or in lieu thereof, clear, accurate and legible copies of all other forms relating to evaluation of personnel performance, for the most recent time period completed;

4. The originals, or in lieu thereof, clear, accurate and legible copies of all records, documents and memoranda, from whatever source, relating to or discussing any of the following:

a. Field Representative and/or Office quotas for significant, adverse, decline or protective information.

b. Performance of any and/or all Field Representatives, past or presently employed.

c. Competitor trials with any other consumer reporting agency or agencies.

d. Performance of your Office in its capacity as a Branch Office of the Retail Credit Company.

5. The originals, or in lieu thereof, clear, accurate and legible copies of all "records" on all consumers who have contacted your Office (whether in person or over the telephone) for disclosure of the information in their files since January 1, 1972 pursuant to Section 689 of said Act;

6. The originals, or in lieu thereof, clear, accurate and legible copies of the receipts or other records of payment for disclosure relating to any of the consumers referred to in # 5 above;

7. The originals, or in lieu thereof, clear, accurate and legible copies of the complete files, regardless of how stored, of the consumers specified in # 5 above;

8. A complete list of the names and addresses of all individuals formerly employed at your Branch Office, including any sub-office within the territory served by your Branch Office, since January 1, 1971. This list shall include the title, or in lieu thereof, a complete and accurate job description, and

an individual's credit rating, fitness for employment, and qualifications for insurance, including personal information on character, reputation, and life style. Specification 7 of the subpoena requested production of the complete files of all consumers who since January 1 had directed the Miami Branch Office to release information in their files. Specification 9 sought the complete files of all individuals investigated by four named credit investigators during certain periods of time. Retail complied with the entirety of the subpoena save specifications 7 and 9; in a letter dated May 8, 1972, the company explained that the disclosures requested in those paragraphs would violate both section 604 of the Fair Credit Reporting Act and the rights of privacy of those consumers whose reports the Commission was seeking.[9]

The FTC petitioned the District Court for an order compelling compliance with its subpoena and for a declaration, pursuant to 28 U.S.C. § 2201 (1959), that section 621 of the FCRA permits voluntary compliance with Commission requests for the production of consumer reports. Retail Credit counterclaimed for a declaration that the Act forbids distribution of consumer reports unless the request is supported by court order or consumer authorization. Because the FTC managed to obtain some of Retail's consumer reports distributed to insurance companies after the initial pleadings were filed, Retail amended its counterclaim to include a request for a declaration that no person or organization could release its reports unless the requirements of section 604 were followed.

At trial Commission witnesses testified to the need for prompt access to consumer reports in investigations of reporting agencies' compliance with the FCRA. Retail responded that the language of the statute did not allow disclosure by administrative subpoena, that the procedures which the Act specified were adequate for the Commission's task, and that the privacy considerations which had prompted passage of the FCRA militated against any unauthorized or unnecessary disclosure. On April 23, 1973, the District Court entered an order denying the Commission's power to compel production of Retail's consumer reports by administrative subpoena. Instead the court treated the FTC petition as an application for a court order under section 604 of the FCRA and proceeded to grant the application, subject to Commission notification, by mail and publication, of the consumers whose reports were sought, in order to afford them an opportunity to refuse disclosure. Because the court denied the FTC direct access to Retail's consumer reports, it similarly disapproved the agency's efforts to secure the reports from third parties who had purchased them for legitimate business purposes, and forbad that line of attack in the future.

II

The Fair Credit Reporting Act speaks with apparent ambiguity of the FTC's power to obtain consumer reports from reporting agencies. Section 604 establishes a seemingly exclusive catalogue of the instances in which reports may be disclosed—"A consumer reporting agency

---

the exact dates of employment for each person contained therein.

9. The originals, or in lieu thereof, clear accurate and legible copies of the complete files, regardless of how stored, of all individuals investigated by * * * during the month of March, 1972; * * * during the period March 12 through March 18, 1972; * * * during the period March 5 through March 11, 1972; and * * * during the period February 27 through March 4, 1972. J.A. 8, 10–11.

9. Subsection (a)(4) of § 602 of the Act, entitled "Findings and purpose," states:

There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(4).

may furnish a consumer report under the following circumstances and no other"—and includes in the list disclosure by court order, with consumer permission, and for a legitimate business purpose. Section 608 also specifically authorizes disclosure of limited identifying information to Government agencies and thus creates no real exception to the general prohibition of section 604.

On the other hand, section 621(a), the provision for administrative enforcement of the FCRA, grants the Commission "such procedural, investigative, and enforcement powers, including the power . . . to require . . the production of documents, and the appearance of witnesses *as though the applicable terms and conditions of the Federal Trade Commission Act were part of this title.*" (Emphasis added.) The inclusive language of the relevant portion of the Federal Trade Commission Act, 15 U.S.C. § 49, applicable to enforcement of the FCRA *mutatis mutandis*, indicates that the investigative powers of the Commission are broad enough to include the subpoena of consumer reports:

> [F]or the purposes of this Act the Commission . . . shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and *the commission shall have the power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation.* . . . (Emphasis added.)

The Commission's plenary power to secure information bearing on authorized agency inquiries is well established by judicial decision. United States v. Morton Salt Co., 338 U.S. 632, 652–53, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 199–201, 216–17, 66 S.Ct. 494, 90

L.Ed. 614 (1946); Adams v. FTC, 296 F.2d 861, 866 (8th Cir. 1961), cert. denied, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962); FTC v. Green, 252 F.Supp. 153 (S.D.N.Y.1966). *Cf.* FTC v. Browning, 140 U.S.App.D.C. 292, 295 n. 7, 435 F.2d 96, 99 n. 7 (1970). Claims of secrecy of subpoenaed information have generally proved no barrier to discovery by the FTC. FTC v. Tuttle, 244 F.2d 605 (2d Cir.), cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957); FTC v. Cooper, CCH 1962 Trade Cases, ¶ 70, 353 (S.D.N.Y.). As Justice Jackson remarked in *Morton Salt, supra,* interpreting the precise statute that is here incorporated by reference, "[w]hen investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." 338 U.S. at 643, 70 S.Ct. at 364. "The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so." 338 U.S. at 642, 70 S.Ct. at 364.

To interpret correctly the powers which Congress conferred on the FTC we must resort to various tools of interpretation. The District Court employed two distinct analytic methods—legislative history and traditional canons of statutory construction—both of which led it to the determination that sections 604 and 608 define the limits of FTC power to obtain consumer credit reports. We find the latter method dispositive, and mention the legislative history of the FCRA only to demonstrate that it neither supports nor undermines our conclusion, but is in fact mute on the issue involved in this case.

The principle that a specific statutory provision prevails over a more general provision is established beyond question. Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944) [10]; D. Ginsberg & Sons

---

10. However inclusive may be the general language of a statute, it "will not be held to apply to a matter specifically dealt with in another part of the same enactment. . . . Specific terms prevail over the general in the same or another statute which otherwise might be con-

v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932); United States v. City of Chester, 144 F.2d 415, 421 (3d Cir. 1944). The District Court applied this rule and found that sections 604 and 608 deal more specifically with disclosure of consumer reports than section 621, a general statement of FTC powers and responsibilities. Because disclosure was identified as the pertinent subject, the Act's general statement of disclosure requirements, section 604, the most thorough treatment of the topic, was accorded priority. Of course a topic can always be isolated which is treated more precisely in one paragraph than in the next. But this controversy revolves around FTC power to compel production of reports in aid of its duty to enforce the Act, not around reporting agencies' responsibilities in voluntarily releasing data in their daily operations. The proposition can scarcely be stated in terms which do not answer the question this case presents, that section 621 deals more specifically with FTC authority to obtain consumer reports for enforcement purposes than do sections 604 and 608, which outline the general requirements of confidentiality imposed on reporting agencies vis-a-vis consumers and clients.

Section 608, "Disclosure to Governmental Agencies," specifically allows disclosure of "identifying information respecting any consumer . . . to a government agency." Clearly agencies in need of greater detail must pursue it according to the strictures of section 604, absent some other statutory basis for access to consumer reports. Retail reasoned, and the trial court ruled, that section 608 creates "no special exception . . . for the Federal Trade Commission." [11] This conclusion is predicated on the faulty premise that section 608 is the sole provision in the Act creating an exception from section 604 for governmental agencies. Section 608 confers addi-

tional power on agencies, but without restrictive language of the sort used in section 604. Section 621, like section 608, constitutes an exception to the general rule of section 604—in fact, it is the precise "special exception . . . for the Federal Trade Commission" which the trial court overlooked. To the general rule for governmental agencies, section 621 adds additional authority: in fulfilling its duty of administrative enforcement, the FTC shall have "the power . . . to require . . . the production of documents . . . as though the applicable terms and conditions of the Federal Trade Commission Act were part of this title." As noted, in the absence of a statutory directive to the contrary FTC power to subpoena documents is not circumscribed by claims of confidentiality. It is difficult to imagine a more specific grant of enforcement powers under the FCRA or a more explicit articulation of FTC authority to compel production of consumer reports than the language of section 621.

Another canon of construction might be invoked to yield the same conclusion. The presumption against interpreting a statute in a way which renders it ineffective is hornbook law. General Motors Acceptance Corp. v. Whisnant, 387 F.2d 774, 778 (5th Cir. 1968); Uptagrafft v. United States, 315 F.2d 200, 204 (4th Cir. 1963); Abbot v. Bralove, 85 U.S.App.D.C. 189, 190–91, 176 F.2d 64, 65–66 (1949). We perceive no way to read that part of section 621 which vests investigatory power in the FTC as subordinate to sections 604 and 608 without stripping the former provision of all significance. Such a construction would make all language in section 621 affirming Commission power to use its administrative subpoena to compel the production of relevant documents either redundant or an utter nullity. [12] In the face of

---

trolling." Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 [52 S.Ct. 322, 323, 76 L.Ed. 704]. 322 U.S. 107, 64 S.Ct. at 894.

11. 357 F.Supp. at 352.

12. Under the construction advanced by Retail the statement in § 621 that "The Federal

Trade Commission shall have . . . the . . . power . . . to require . . the production of documents" is merely repetitive of the Commission's power to obtain reports under the three conditions set forth in

a perfectly plausible and consistent alternative construction of the statute, this position is untenable. *See generally* Jarecki v. G. D. Searle & Co., 367 U.S. 303, 307–08, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961); United States v. Menasche, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955); Abbot v. Bralove, *supra*; Ruiz v. Morton, 462 F.2d 818, 819–20 (9th Cir. 1972).

■ The principle that a statute should be read and construed as a whole is also germane to this situation. *See* United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 542–43, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Smither & Co. v. Coles, 100 U.S.App.D.C. 68, 70, 242 F.2d 220, 222, cert. denied, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1129 (1957). Had sections 604 and 608 not contained generalized statements on the disclosure and discoverability of consumer reports, the FTC would have enjoyed its customary enforcement powers, including the power to obtain documents by administrative subpoena, without any express declaration to that effect.[13] Because the broad language of sections 604 and 608 might call the FTC's investigatory pow-

ers into question, section 621 specifically authorizes the Commission by administrative subpoena to compel the production of documents in enforcement proceedings. The significance of this latter provision is highlighted when it is read in conjunction with sections 604 and 608; it is the specific exception to the more general statements limiting the disclosure of consumer reports which the District Court sought.

### III

■ The proper function of legislative history is to resolve ambiguity, not to create it. United States v. Missouri Pac. R. Co., 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322 (1929)[14]; Montgomery Charter Service, Inc. v. Washington Metropolitan Area Transit Commission, 117 U.S.App.D.C. 34, 37, 325 F.2d 230, 233 (1963). When the FCRA is read as an integrated whole it does not speak ambiguously of the FTC's power to compel the production of consumer reports; on the contrary, the specific language of section 621 affirms that power. We examine the legislative history of the Act to demonstrate that it does not contra-

---

§ 604, and to discover identifying information absent those circumstances under § 608. That portion of § 621 which authorizes the FTC to use its customary enforcement powers—notably its administrative subpoena—to enforce the FCRA becomes meaningless by this reading, for the Commission would be prohibited from issuing a subpoena without the prior judicial approval required by § 604. Such a construction would severely restrict the FTC in carrying out its statutory duty to enforce the Act in all its particulars.

13. Section 621 provides in part that a violation of the FCRA shall constitute "an unfair or deceptive act or practice in commerce in violation of section 5(a) of the Federal Trade Commission Act and shall be subject to enforcement by the Federal Trade Commission under Section 5(b) thereof . . . ." This declaration of FTC jurisdiction over violations of the Act implies the availability of the Commission's statutory investigative powers in proceedings enforcing the FCRA. *See generally* Automatic Canteen Co. v. FTC, 346 U.S. 61, 79, 73 S.Ct. 1017, 1027, 97 L.Ed. 1454 (1953), acknowledging that the Commission had a "broad power of investigation and sub-

poena" under the Robinson-Patman Act, 15 U.S.C. § 13, though in conferring upon the FTC authority to enforce that act Congress did not mention subpoena powers. FTC v. Tuttle, 244 F.2d 605 (2d Cir. 1957), similarly upholds the power of the FTC to issue subpoenas in proceedings under the Clayton Act, 15 U.S.C. § 18.

14. Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure and other like extraneous matter may be taken into consideration to aid in the ascertainment of the true legislative intent. But where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed.

278 U.S. at 278, 49 S.Ct. at 136 (citations omitted).

dict our interpretation of provisions of the statute.

Retail argued, and the District Court ruled, that the Senate meant unequivocally to require that information disclosed to *any* governmental agency be limited to identifying data, unless the requirements of section 604 were met. The Senate Committee Report on S. 823, passed by the Senate on November 6, 1969, states:

> *Section 608.—Disclosure to Governmental Agencies—*
>
> The disclosure of information to governmental agencies is limited to identifying type information . . . unless the governmental agency has obtained a court order or is a bona fide creditor, insurer, employer, or licensor.[15]

We find the impact of this "unequivocal legislative history" mitigated substantially by the Senate Committee's equally concise explanation of the provision enacted as section 621. The Committee report states that to supplement judicial enforcement of the Act through civil actions brought by consumers,

> [c]ompliance would be further enforced by the Federal Trade Commission with respect to consumer reporting agencies and users of reports who are not regulated by another Federal agency. *The FTC can use the cease and desist authorities and other procedural, investigative and enforcement powers which it has under the FTC Act to secure compliance.*[16]

No more explicit affirmation of the availability of the full panoply of FTC investigative powers was necessary to indicate that the Commission's statutory role as guardian of the FCRA excepted it from the strictures of sections 604 and 608 in fulfilling that role. That the specific should prevail over the general is not merely a technical canon of statutory construction, but also, to borrow Justice Holmes' phrase, an axiom of experience.[17] Logic, experience and the law dictate that the item of legislative history which speaks most particularly of the FTC's power to require the production of documents in a given situation should be given the greatest weight.

During congressional deliberation of the FCRA other agencies whose statutory functions would be aided by access to the reports and whose use of the documents would be to the consumers' advantage requested the power to obtain consumer reports without securing a court order or consumer permission. Because Congress did not act upon these claims of need and benign purpose, Retail argues that the FTC should not be accorded a preferred position on the ground that prompt access to the reports is essential to enforcement of the Act and the protection of consumers' interests. But the legislative decision to ignore pleas for outright exemptions from sections 604 and 608 advanced by the Federal Reserve Board and the Office of the Comptroller of the Currency are of negligible significance. Both agencies are given specific authority to enforce compliance with the FCRA in section 621(b) of the Act, according to the terms of their respective organic statutes. Those bodies appealed to Congress for new statutory authority, the power to obtain confidential reports by administrative subpoena; the FTC seeks only to maintain an investigative tool which has traditionally been part of its hegemony, and which is specifically incorporated into the FCRA by the language of section 621(a). Moreover, the significance of congressional inaction in these circumstances cannot be equated with the force of the explicit phrasing of section 621.

The legislative history of the Act, particularly the Senate Committee's broad affirmation of the FTC's investigative enforcement powers, is consistent with

---

15. S.Rep.No.91–517, 91st Cong., 1st Sess. 6 (1969).

16. *Id.* at 7 (emphasis added).

17. Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928).

specific language in section 621 outlining the Commission's unique role in supervising the conduct of reporting agencies. In that supervisory capacity the FTC is distinct from the general class of governmental agencies to which section 608 refers; its duty to enforce the FCRA creates a particular and continuous need for access to consumer reports, a need of a different order from that of any other governmental agency.

## IV

The District Court also ruled that the limitations of section 604 governed the FTC's attempts to obtain consumer credit reports from Retail's customers—in particular, from certain insurance companies which on several occasions had furnished the Commission with the documents in the absence of an appropriate court order. That ruling was predicated on two conclusions: that the Commission could not pursue by indirection a course specifically forbidden by the FCRA; and implicitly, that the Act was intended to cover disclosure of confidential credit information by parties other than reporting agencies. Because we disagree with its premises, we must disapprove this ancillary holding as well.

By its terms section 604 regulates disclosure by "consumer reporting agencies" and no other parties. Passage of the FCRA was prompted by concern over the power of those agencies and the potential for abuse it presented, not the lesser risk of subsequent disclosures or distortions by the more fragmented

group of customers of reporting agencies.[18] The sole manifestation of congressional attention to the latter problem is section 615, which imposes upon users of consumer reports the duty to disclose to individuals whose credit is impaired the identity of reporting agencies which compiled the damaging information, and which allows a consumer to discover the nature of data which adversely affects his credit standing regardless of whether it is disseminated by a reporting agency. A number of other consumer safeguards[19] help to create a substantial likelihood that a consumer will be aware that information potentially damaging to his credit standing is in circulation. Because at that point the consumer may discover and challenge the information, regulation of disclosure by users to third parties is a less essential aspect of the protection of the confidentiality of personal information used in the determination of credit standing.

■ Since the Commission may obtain reports from reporting agencies without regard to sections 604 or 608 in enforcing the FCRA, *a fortiori* those provisions should not bar disclosure to the FTC by the customers of the agencies, parties not within the purview of the Act.

## V

■ Our determination that third parties may obtain consumer reports from customers of reporting agencies is founded on the language of the FCRA; it does not evidence disagreement with the congressional conclusion that unlim-

---

18. Section 602 of the Act provides:

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of customers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(2)–(4).

19. Section 607 imposes upon the agencies a duty to verify the identity of prospective users of reports and to ascertain that the reports will serve purposes permissible under the statute. Sections 609, 610 and 611 afford the consumer an opportunity to discover the nature, substance, and in some cases the sources of information in his file, and outline a procedure for reexamining data of disputed accuracy. Section 613 provides that consumers shall be apprised of the identity of recipients of any potentially damaging information which is of public record. As noted, each of these provisions is reinforced by the civil penalties established in sections 616 and 617.

**998**

ited disclosure of information bearing on personal financial affairs, lifestyle and character will do harm both to individuals involved and to the banking system. Though we rule that the FTC may obtain consumer reports by administrative subpoena in enforcing the Act, we find implicit in the statutory scheme of the FCRA the caveat that the Commission is prohibited from using information which it obtains under section 621 for any purpose other than carrying out its enforcement duties under the Act.[20]

This qualification imposes on the FTC a burden not shared by individuals or organizations who obtain consumer reports under section 604. But those users of reporting agencies' data have either made a showing sufficient to secure a court order compelling disclosure, or they have purchased the information to fulfill a presumably legitimate business need. As users of credit reports they are specifically made liable to the civil penalties imposed by sections 616 and 617 for failure to comply with the notification requirements of section 615. Certain natural forces may induce these users to keep credit reports confidential. For example, a potential employer or business associate whose reputation is essential to financial success will be chary of indiscriminate disclosures of personal material when to make those disclosures could harm his esteem and thus his competitive position in a given business community.

The FTC stands in an altogether different posture. Congress afforded it a means of quick access to consumer reports for a solitary and limited purpose: enforcement of the FCRA. The Commission's interest lies not in evaluating the details of consumers' financial positions or character analyses, but rather in protecting consumers from certain proscribed reporting practices. Because section 621 gives the FTC a specific and exclusive province of administrative enforcement, subsequent disclosure of data

the Commission subpoenas cannot, in the ordinary case, serve the limited purpose for which the subpoena is authorized. Thus we conclude that the FTC, to the maximum extent consistent with its enforcement duties, must safeguard the confidentiality of any information in consumer reports it obtains by administrative subpoena under section 621 of the FCRA.

The judgment of the District Court is Reversed.

---

**20.** We leave to an appropriate case those questions which might arise when private citizens claim the right to the disclosure of such

information under the Freedom of Information Act, 5 U.S.C. § 552.