NATIONAL STATE BANK OF ELIZABETH, N. J., Plaintiff,

New Jersey Bankers Association, Intervening Plaintiff, Appellants in No. 78–1160,

v.

James E. SMITH, Comptroller of the Currency, Federal Home Loan Bank Board, Gilbert G. Roessner, Gerald E. Rupp, Alfred H. Hedden, David W. Matchett, Ronald J. Tell, John W. Atherton, Jr., City Federal Savings and Loan Association, and City Consumer Services, Inc., Defendants.

Appeal of CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, City Consumer Services, Inc., Gilbert G. Roessner, Gerald E. Rupp, Alfred H. Hedden, David W. Matchett, Ronald J. Tell and John W. Atherton, Jr., in Nos. 78–1161 and 78–1331.

Appeal of John G. HEIMANN, Comptroller of the Currency, in No. 78–1162.

Nos. 78–1160, 78–1161, 78–1162 and 78–1331.

United States Court of Appeals, Third Circuit.

Argued Oct. 18, 1978.

Decided Jan. 15, 1979.

As Amended on Denial of Rehearing Feb. 5, 1979.

---

Michael F. Spicer, Jamieson, McCardell,
Moore, Peskin & Spicer, Princeton, N. J.,

for New Jersey Bankers Assoc., appellant in No. 78–1160 and cross-appellee in Nos. 78–1161–62 and 78–1331.

Ralph L. Straw, Jr., Wharton, Stewart & Davis, Somerville, N. J., for National State Bank of Elizabeth, New Jersey, appellant in No. 78–1160 and cross-appellee in Nos. 78–1161 to 78–1162 and 78–1331.

William F. McKenna, McKenna & Fitting, Los Angeles, Cal., for City Federal Savings & Loan Association, et al., appellees in No. 78–1161 and 78–1162 and cross-appellants in No. 78–1161 and 78–1331.

Barbara L. Herwig, App. Section, Civ. Div., Dept. of Justice, Washington, D. C., for John G. Heimann, Comptroller of the Currency, appellee in Nos. 78–1160, 78–1161 and 78–1331 and appellant in No. 78–1162.

Harvey Simon, Federal Home Loan Bank Board, Washington, D. C., for appellee, Federal Home Loan Bank Board.

Before GARTH, BIGGS and MARIS, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

This civil action was brought in the District Court for the District of New Jersey on July 29, 1976, by National State Bank of Elizabeth, N. J., (herein National State), against the Comptroller of the Currency (herein Comptroller), the Federal Home Loan Bank Board (herein Board), City Federal Savings and Loan Association (herein City Federal), City Consumer Services, Inc. (herein City Consumer) and Gilbert G. Roessner, Gerald R. Rupp, Alfred H. Hedden, David W. Matchett, Ronald J. Tell and John W. Atherton, Jr. (herein the individual defendants). The complaint sought a declaratory judgment that the actions of the Board and the Comptroller in approving the creation of City Trust Services, N.A. (herein City Trust) were invalid as contrary to the Home Owners' Loan Act of 1933, 12 U.S. C.A. § 1461 et seq., the National Bank Act, 12 U.S.C.A. § 21 et seq., the Bank Holding Company Act, 12 U.S.C.A. § 1841 et seq., the Sherman Antitrust Act, 15 U.S.C.A. § 1,

and the Clayton Act, 15 U.S.C.A. § 19. The complaint also sought orders enjoining the Comptroller from issuing a certificate of authority to commence business to City Trust and enjoining City Federal, City Consumer and the individual defendants from engaging in the business of banking.

Answers were filed by all defendants and the case was heard and decided by the court on cross motions for summary judgment. The court (1) adjudged the Comptroller's actions in approving the creation of City Trust to be invalid, (2) ordered him to revoke the certificate of authority which he had issued to City Trust, and (3) dismissed as moot the claims against the other defendants. The New Jersey Bankers Association (herein Bankers) was first permitted to enter the case as *amicus curiae* and shortly after the entry of the final judgment against the Comptroller was permitted to intervene as a party plaintiff. From the portion of the final judgment against him adjudging his approval of the creation of City Trust to be invalid and directing him to revoke the certificate of authority issued to City Trust the Comptroller appealed (No. 78–1162). City Federal, City Consumer and the individual defendants likewise appealed from that part of the final judgment (No. 78–1161) and also from the order permitting Bankers to intervene (No. 78–1331). National State and Bankers appealed from the portion of the final judgment dismissing as moot the claims against all the defendants except the Comptroller (No. 78–1160).

The facts are not in dispute and will be briefly stated. Central to them was the creation of City Trust as a national bank which was to conduct only the business of a commercial bank trust department and which was to be a wholly-owned subsidiary of City Consumer which in turn is a wholly-owned subsidiary of City Federal. It seems clear that the intention was to operate City Trust as, in effect, a trust department of City Federal. In order to create this subsubsidiary City Federal, as a savings and loan association organized pursuant to the laws of the United States, had to obtain the

approval of the Board as the agency in charge of regulating federal savings and loan associations.

City Federal accordingly made application on September 19, 1974, for permission to permit its existing subsidiary, City Consumer, to invest in the stock of City Trust, a proposed national bank to be chartered by the Comptroller for the purpose of offering certain fiduciary services. On October 28, 1975, the Board formally approved the application by resolution which included, *inter alia*, the following conditions:

"1. The Comptroller issues a national bank charter to CTS, together with a special permit authorizing it to exercise fiduciary powers;

"2. CTS executes an agreement with the Comptroller under the terms of which CTS shall agree to render only those fiduciary services as may be authorized under the special permit issued by the Comptroller, and that it will not engage in any other activities otherwise permissible under a national bank charter, including the making of commercial loans and the receipt of deposits other than trust funds;

"3. CTS' Articles of Association are drafted in such manner that CTS is authorized to perform only those fiduciary services authorized by the Comptroller.

"4. The Federal Reserve Board issues a written opinion affirming that neither CFS or CCS will become a bank holding company by virtue of the Comptroller's issuance of a national bank charter to CTS; . . ."

Condition 4 above quoted was considered by the Federal Reserve Board which informed City Federal by letter of March 4, 1976, that in the opinion of its legal department City Trust would not be a bank within the definition of the Bank Holding Company Act, 12 U.S.C.A. § 1841, because it would not accept deposits or make loans and that, therefore, neither City Federal nor City Consumer would become a bank holding company by virtue of the incorporation of City Trust by the Comptroller as a national bank.

On April 14, 1975, while its application to the Board was pending, City Federal, having on April 3, 1975, requested authority for City Trust to offer fiduciary services without the customary authority of a national bank to receive deposits and make loans, made application to the Comptroller for permission to organize a national banking association to be known as City Trust Services, N.A. The application was accepted for filing on July 3, 1975. Twelve banks, including National State, together with Bankers filed objections to the application. A hearing was held on the application on October 28, 1975, by the Regional Administrator of National Banks following which, on June 28, 1976, City Federal was notified that the Comptroller had granted preliminary approval of its application to organize a national bank and exercise fiduciary powers. The approval was given subject to certain stated conditions, among them

" . . . that Article Eighth of the Articles of Association should be adopted to read as follows:

'The corporate existence of the Association shall continue until terminated in accordance with the laws of the United States. The purpose of the Association shall be to carry on the general business of a commercial bank trust department and to engage in such activities as are necessary, incident or related to such business. This Article shall not be amended, or any other provision added elsewhere in these Articles expanding the powers of the Association, without the prior approval of the Comptroller of the Currency.' "

As we have said, National State, as plaintiff, filed the present suit on July 29, 1976, against the Board, the Comptroller, City Federal, City Consumer, and the six individual defendants who were directors or officers of City Federal and incorporators and proposed directors of City Trust seeking declaratory relief against the Board and the Comptroller and injunctive relief against City Federal, City Consumer and the individual defendants. City Trust was not named as a defendant, it having not yet been incorporated. While the litigation was

in its preliminary stages, the Comptroller, on December 13, 1976, accepted articles of association and an organization certificate from the organizers of City Trust, at which time City Trust became a body corporate under the National Bank Act, 12 U.S.C.A. § 24. Subsequently on January 3, 1977, the Comptroller issued to City Trust a certificate of authority "to commence the business of banking as a National Banking Association" and a special permit, pursuant to 12 U.S.C.A. § 92a, to engage in certain of the fiduciary activities contemplated by that section. City Trust commenced operations on January 4, 1977.

The district court filed its opinion on the motions for summary judgment on September 16, 1977, and on November 4, 1977, a final judgment was entered (1) declaring that the approval of the creation of City Trust by the Comptroller was contrary to law and invalid, (2) ordering the Comptroller to revoke the certificate of authority to commence business issued to City Trust and (3) ordering the suit dismissed as moot as to all defendants other than the Comptroller. Subsequently on December 29, 1977, the court permitted Bankers to intervene as a party plaintiff. Upon application of the Comptroller, the court stayed enforcement of its final order pending appeal. The four appeals now before us followed.

One of the issues raised by the appeals of the defendants must be confronted at the outset. It is whether, as the district court held, the plaintiff, National State, has standing to bring this suit to review the actions of the Comptroller in approving the incorporation of City Trust with powers limited to the conducting of fiduciary business. In *Shiffler v. Schlesinger,* 548 F.2d 96, 102 (3d Cir. 1977), this court summarized the two tests for determining such standing, as follows:

"In order to obtain judicial review of agency action, plaintiffs must satisfy two requirements: (1) they must demonstrate the existence of a case or controversy within article III, that is, that they have suffered injury in fact, economic or otherwise as a result of agency action; and (2)

they must be persons ' . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702 (1970), that is, the interests they seek to protect must be arguably within the zone of interests to be protected by the act. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins,* 397 U.S. 159, 164, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970)."

With respect to the standing of plaintiff National State to sue the Comptroller we think that both tests have been met. Indeed, as to the second test, it is so well established that competitor banks have the right to challenge the Comptroller's approval of an application to organize a national bank that the federal courts have frequently entertained suits by competitor banks against the Comptroller without even discussing the question of standing. *See e. g., Central Bank v. Smith,* 532 F.2d 37 (7th Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 179 (1976); *City National Bank v. Smith,* 168 U.S.App.D.C. 221, 513 F.2d 479 (1975); *First National Bank of Fayetteville v. Smith,* 508 F.2d 1371 (8th Cir. 1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *Bank of Commerce of Laredo v. City Nat. Bank of Laredo,* 484 F.2d 284 (5th Cir. 1973), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974). In fact the defendants do not seriously contend otherwise but confine their attack to the determination by the district court that National State also satisfied the first requirement.

In making this determination, the court relied upon an affidavit of an assistant vice president of National State that "City Trust Services, N.A., will or may compete with National State Bank in offering trust services to the public." In this connection, it also appeared that the main offices of National State and City Federal (at the office of which City Trust was to conduct its business) were but one block apart in the City of Elizabeth, New Jersey. We see no error in the determination by the

district court that these facts demonstrated the prospect of future economic injury to the plaintiff. An allegation of actual injury is not essential. Indeed in this case it could not have been made since the complaint was filed nearly six months before City Trust began business. On the contrary, a prospect of threatened economic injury will suffice to establish the necessary personal stake in the outcome of the dispute which assures its litigation in an adversary context.[1] *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Data Processing Service v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1975); *Concerned Residents of Buck Hill Falls v. Grant,* 537 F.2d 29, 33 (3d Cir. 1976). *Cf. Paton v. La Prade,* 524 F.2d 862, 867–868 (3d Cir. 1975).

All the defendants argue that it was the intent of the organizers of City Trust and the understanding of the Comptroller that City Trust would use its trust department powers for the benefit of persons of moderate means not served by existing banks. The defendants refer us to a letter written by the Comptroller to National State in February 1977 in which the Comptroller states, "By means of this new national bank, an aggressive savings and loan association, through its subsidiary, proposes to actively seek and to serve a large body of potential customers which apparently are not now served, nor whose trust business has otherwise been so sought, because of the size of the accounts to be serviced." But whatever may have been in the minds of the organizers of City Trust and the Comptroller, the fact is that the organizers applied for and received "full authority to offer fiduciary services." Article Eighth of City Trust's articles of association states

that "The purpose of the Assocation (sic) shall be to carry on the general business of the commerical (sic) bank trust department and to engage in such activities as are necessary, incident, or related to such business."

While it is true that the Board required that City Trust provide fiduciary services for individuals only, that limitation on City Trust's activities would not preclude the probability of a competitive relationship between City Trust and National State.[2]

The threat of economic harm to National State through the competition of City Trust establishes in part the requisite injury for standing. In addition, the court must be satisfied that the alleged injury " 'fairly can be traced to the challenged action of the defendant,' *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450, or put otherwise, that the exercise of the Court's remedial powers would redress the claimed injuries. *Id.,* at 43, 96 S.Ct. at 1926." *Duke Power Co. v. Carolina Env. Study Gp.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

There can be little doubt but that National State's complained of injury is the direct result of the Comptroller's approval of the application to organize City Trust as a national bank and his subsequent issuance to City Trust of a certificate of authority to commence the business of banking and a permit to perform fiduciary functions. Moreover, National State will have full and immediate relief in the event of a final determination that the Comptroller's actions are in excess of his authority under the National Bank Act and must, therefore,

---

1. Under the circumstances of this case, it was not error for the district court to stay discovery by the defendants on this issue.

2. The Board relies on *Public Citizen v. Lockheed Aircraft Corp.,* 184 U.S.App.D.C. 133, 565 F.2d 708 (1977), for the proposition that the probable injury from the competition of City Trust claimed by National State is speculative. In *Public Citizen v. Lockheed Aircraft Corp.* the plaintiff, an association of dealers in used industrial equipment, claimed, *inter alia,* injury to

its members in the form of competition from Lookheed Aircraft Corporation. The court held that evidence of an isolated sale of a piece of machinery by Lockheed Aircraft was insufficient to establish it as a future competitor in the business of buying and selling machinery. That case is thus clearly distinguishable from the case before us where National State and City Trust will be conducting the same type of business in the same neighborhood.

be revoked. We are satisfied that the district court did not err in holding that National State has standing to prosecute the present suit against the Comptroller.

In view of the fact that National State, the original plaintiff, has standing to bring the suit, we need not consider whether Bankers, the intervening plaintiff, also has such standing. *Duke Power Co. v. Carolina Env. Study Gp.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Arlington Heights v. Metro. Housing Corp.*, 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Moreover, for this reason as well as because it had previously been permitted by the district court to participate as *amicus curiae* and its presence as a party has not caused undue delay and cannot prejudice the defendants, we see no abuse of discretion in permitting Bankers' formal intervention even though after judgment. *United States v. Mellon Bank, N. A.*, 521 F.2d 708, 711 n. 11 (3d Cir. 1975); 7A Wright & Miller, *Federal Practice and Procedure* § 1916 (1972).

■ City Federal, City Consumer and the individual defendants urge that City Trust was an indispensable party to the action and that the action should be dismissed in its absence. The district court rejected this contention and so do we. Obviously, City Trust could not have been joined at the outset since it had not yet then been created. It could, of course, have been brought into the suit later on as an additional defendant had those interested in it thought well of doing so. But the determination of whether a party must be joined as indispensable is to be governed by pragmatic considerations, as indicated in Rule 19 of the Federal Rules of Civil Procedure, *see Provident Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118–119, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), and failure to effect such joinder is not erroneous if, in its absence, complete relief can be accorded the absent party through those already parties. Here all those interested in City Trust both as stockholders and directors are parties defendant and have ably and vigorously defended its interests both in the district court and on appeal. Indeed, the individual defendants, as City Trust's officers and directors are the very same individuals who would have been required to defend its interests had it been brought in as a party defendant. As a practical matter, in that capacity they could have added little or nothing but a formal position to what they have already presented in the district court and here. This may well be the reason why they took no steps toward City Trust's formal joinder. We are satisfied that City Trust has not been prejudiced by its absence as a formal party and that the refusal of the district court to dismiss the complaint in its absence was not error. *Cf. New York Stock Exchange v. Smith*, 404 F.Supp. 1091, 1096 (D.C.D.C.1975), *vacated on other grounds*, 183 U.S.App.D.C. 217, 562 F.2d 736 (1977).

We turn then to consider the defendant-appellants' contention that the district court erred in its judgment declaring the Comptroller's approval of the creation of City Trust to be invalid and ordering him to revoke the certificate of authority which he had issued to it. It will be recalled that the Comptroller accepted City Trust's articles of association and organization certificate on December 13, 1976, and on January 3, 1977, issued to it a certificate of authority to commence the banking business, pursuant to the National Bank Act, Sec. 5169 R.S., 12 U.S.C.A. § 27, and a special permit, pursuant to Sec. 1(a) of the Act of September 28, 1962, 76 Stat. 668, 12 U.S.C.A. § 92a(a), to exercise fiduciary powers. At the same time, the Comptroller required City Trust in its articles of association and elsewhere to agree to limit its activities to the business of a commercial bank trust department and such activities as are necessary, incident or related to that business. It is this restriction upon the operations of City Trust amounting to a prohibition against its engaging in the general banking business of receiving deposits and making loans, which the district court held to invalidate the creation of City Trust, action which the defendant-appellants urge as error.

This issue was fully presented to us by the parties at the argument of the appeals on October 18, 1978, on the basis of the then existing law. On November 10, 1978, however, the Financial Institutions Regulatory and Interest Rate Control Act of 1978, Pub.L. 95–630, 92 Stat. 3641, was enacted by Congress.[3]

Section 1504 of that Act amended the National Bank Act, Sec. 5169 R.S., 12 U.S. C.A. § 27, by adding thereto the following sentence:

> "A National Bank Association, to which the Comptroller of the Currency has heretofore issued or hereafter issues such certificate, is not illegally constituted solely because its operations are or have been required by the Comptroller of the Currency to be limited to those of a trust company and activities related thereto."

 This new statutory provision validates retroactively as well as prospectively the action of the Comptroller in limiting to the business of a trust company the operation of a national banking association to which he has granted a certificate of authority to commence business. It seems clear, therefore, that pursuant to this statutory mandate, the Comptroller's action limiting the business of City Trust to the operations of a commercial bank trust department must now be held to be valid if the statutory phrase "trust company" may be read as limited in meaning to the trust or fiduciary operations of such a company. Unless we so read the statute, it becomes virtually meaningless since, in most states, and certainly in New Jersey where City Trust is to do business, trust companies are authorized to and ordinarily do conduct the general banking business of receiving deposits and making loans in addition to their fiduciary activities. Indeed, in New Jersey a trust company is incorporated under the banking laws and as a practical matter is actually a bank which has specially qualified itself to exercise fiduciary powers. *See* N.J.S.A. 17:9A–28. Thus, restricting to the

exercise of trust *company* powers the operations of a national bank which has been empowered under the Act of September 28, 1962, 12 U.S.C.A. § 92a, to exercise also fiduciary powers would in practice often amount to no restriction at all. And this would certainly be so in the present case if, as seems logical, the powers of a New Jersey trust company are to be taken as the statutory standard in the case of a national bank authorized to operate in that state.

 We assume, of course, that Congress intended its enactment to have meaningful effect. We must accordingly, if possible, construe it so as to give it such effect. *U. S. v. Amer. Trucking Ass'ns,* 310 U.S. 534, 543–544, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *Holy Trinity Church v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892); *United States v. Mendoza,* 565 F.2d 1285, 1288–1289 (5th Cir. 1978); *F. T. C. v. Manager, Retail Credit Co., Miami Br. Off.,* 169 U.S.App.D.C. 271, 277, 515 F.2d 988, 994 (1975). We find no legislative history to assist us in this task. But we do have the background fact that Congress by the Act of September 28, 1962, 12 U.S.C.A. § 92a, had empowered the Comptroller by special permit to authorize a national banking association to exercise certain fiduciary powers in addition to its normal banking functions. We think that it must have been these specially permitted fiduciary powers to which Congress intended to refer when by its recent enactment it authorized the Comptroller to restrict the operations of a national bank to those of a trust company and activities related thereto. In other words, it was the fiduciary operations carried on in the trust department of such a company or of a commercial bank to which reference must have been intended. Only by being so read does the statute have full meaningful effect and we so read it. It follows that regardless of whether the district court's judgment declaring the Comptroller's action invalid and ordering him to revoke it was correct when it was entered

---

**3.** Pursuant to our direction, the parties have submitted supplemental briefs on the effect of the Act enacted during the pendency of the appeals which it is our duty to consider. *Carpenter v. Wabash Ry. Co.,* 309 U.S. 23, 27, 60 S.Ct. 416, 84 L.Ed. 558 (1940).

(a question we need not now consider), the amendment made by the Act of November 10, 1978, to § 5169 R.S., 12 U.S.C.A. § 27, has validated the Comptroller's action and requires the reversal of the judgment of the district court on these issues.

It remains for us to consider the last clause of the judgment, which ordered the suit dismissed as moot as to all defendants other than the Comptroller. It will be recalled that the complaint also seeks a declaratory judgment that the actions of the Board were invalid in approving the creation of City Trust and its acquisition by City Federal as a sub-subsidiary and further seeks an injunction against City Federal, City Consumer and the individual defendants from engaging in the business of banking through City Trust. In this connection, violations of the Home Owners' Loan Act, the Bank Holding Company Act, the Sherman Antitrust Act, and the Clayton Act are alleged. In the light of our conclusion that under the recent statute the creation of City Trust as a national banking association and its restriction to fiduciary business must now be held to be valid, it is clear that the issues raised as to the other defendants are no longer moot. These issues, however, have not been adjudicated by the district court. While they all involve City Trust in one way or another, they raise a number of questions with respect to the application of the statutes referred to which are quite distinct from and unrelated to the issues involved in the plaintiff's claim against the Comptroller. They must, therefore, now be reinstated and remanded to the district court for trial and adjudication, *Katz v. Carte Blanche Corporation,* 496 F.2d 747, 764 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *see,*

*Jurinko v. Edwin L. Wiegand Co.,* 528 F.2d 1214 (3d Cir. 1975), if the plaintiff, National State, has standing to prosecute them. Obviously, the bank has standing to sue City Federal, City Consumer and the individual defendants on its Sherman and Clayton Acts claim. The more difficult question is whether it has standing to sue the Board on its claim that the Board violated the Home Owners' Loan Act and the Bank Holding Company Act in approving the creation of City Trust and authorizing the acquisition of that institution by City Federal as a sub-subsidiary.

 Again applying the two criteria for determining standing to sue a government agency we are satisfied that a sufficient showing of prospective injury as the result of the Board's action has been made. This subject has already been discussed in connection with the question of National State's standing to sue the Comptroller and we need hardly add to that discussion here.[4] Whether the second criterion has been met, namely whether the interests National State seeks to protect fall arguably within the zone of interests intended to be protected by the Home Owners' Loan Act, presents a more difficult question. In deciding this question we are not limited to the particular provisions of the statute allegedly violated but may look to the entire statutory scheme. *Concerned Residents of Buck Hill Falls v. Grant,* 537 F.2d 29, 33 (3d Cir. 1976); *Davis v. Romney,* 490 F.2d 1360, 1365 (3d Cir. 1974).

The Home Owners' Loan Act of 1933 authorized the Board to provide for the organization of federal savings and loan associations to make available " . . . local mutual thrift institutions in which people may invest their funds and in order

---

**4.** National State satisfies the requirement that a causal relationship exist between the action of the Board and its claimed injury. *See Duke Power Co. v. Carolina Env. Study Gp.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Arlington Heights v. Metro. Housing Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The injury which National State will suffer as a direct result of the alleged illegal action of the Comptroller is also traceable to the Board's resolution of October 28, 1975, approving City Federal's application for permission for its wholly-owned subsidiary, City Consumer, to organize and invest in the capital stock of City Trust. If National State is successful in obtaining a declaratory judgment that the Board's action was illegal and invalid, it will have complete relief regardless of the outcome of its controversy with the Comptroller.

to provide for the financing of homes . . ." 12 U.S.C.A. § 1464(a). The Act provides that "No charter shall be granted . . . unless the same can be established without undue injury to properly conducted existing local thrift and home-financing institutions." 12 U.S.C.A. § 1464(e). This provision obviously expresses the congressional concern to protect the interests of existing state institutions which compete with federal savings and loan associations. Banks with trust departments, such as National State, arguably may be included in this competing group since they frequently invest trust funds in home mortgage loans. We do not agree with what we regard as the unduly narrow view of the arguable scope of this provision of the statute which was taken in *Union National Bank of Clarksburg v. Home Loan Bank Board,* 98 U.S.App.D.C. 204, 233 F.2d 695 (1956), upon which the Board relies. The Act also authorizes federal savings and loan associations to create subsidiary service corporations. 12 U.S.C.A. § 1464(c). However, the general statutory scheme, as well as its legislative history,[5] supports the view that Congress intended that the corporation in which federal savings and loan associations invest will be limited to the performance of services and functions related to the business of savings and loan associations. Here, City Federal has sought through its subsidiary, City Consumer, to invest in City Trust, a national bank trust company which is, it is argued, not merely not limited to the performance of functions related to the savings and loan business, but is likely to be in competition for trust business with its near neighbor, National State.

■ In *Data Processing Services v. Camp,* 397 U.S. 150, 155–156, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Supreme Court,

noting that section 4 of the Bank Service Corporation Act, 12 U.S.C.A. § 1864, restricts the activities of bank service corporations to the performance of bank services for banks, held that the section arguably brought within the zone of interests protected by the Act a competitor of the bank in the furnishing of data processing services to the bank's customers. Here it may reasonably be argued that 12 U.S.C.A. § 1464(c) restricts savings and loan service corporations to the performance of services related to the savings and loan business, the limitation being arguably, *inter alia,* for the protection of institutions such as National State with which they might otherwise be in competition. We conclude that the plaintiff, National State, has standing to prosecute the present suit against the Board.

The order of the district court granting the motion of the New Jersey Bankers Association to intervene will be affirmed, with costs to the appellees in No. 78–1331.

The judgment of the district court will be reversed and the cause will be remanded with directions to dismiss the complaint as to the Comptroller, to reinstate it as to the other defendants and conduct further proceedings thereon not inconsistent with this opinion, with costs to the appellants in Nos. 78–1161 and 1162. In No. 78–1160 the parties will bear their own costs.

---

**5.** H.R.Rep.No.1703, 88th Cong., 2d Sess. (1964), 1964 U.S.Code Cong. and Admin.News, pp. 3416, 3443–3444, states, " . . . the Committee does not contemplate that an association would be permitted to invest in ordinary profit-making corporations or corporations not closely related in purpose to the savings and loan business."

The Board in its regulations issued under the Act takes the same restrictive view as do we as

to the scope of the Act. 12 C.F.R. § 545.9–1(a)(4) and (b)(2). The board has argued that legislative history should not be relied on in deciding standing. On the facts of this case and in the light of the Board's own regulations which follow the legislative history to which we have referred, we do not think that argument is applicable here.